### BEN KING v. STATE.

No. 1991.   Decided December 4, 1912.

Rehearing Denied January 15, 1913.

**1.—Assault to Murder—Charge of Court.**

   Where the requested charges were partly contained substantially in the court's main charge, and others were incorrect, there was no error in the court's refusal to submit same.

**2.—Same—Evidence—Bill of Exceptions.**

   Where the bill of exceptions to the admission of testimony was defective, the same could not be considered on appeal.

**3.—Same—Argument of Counsel—Bill of Exceptions.**

   Where the bill of exceptions to the argument of State's counsel was defective, there was no error.

Appeal from the District Court of Smith. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Hanson & Butler,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted and convicted of assault with intent to murder Chris Hammonds, and his punishment fixed at two years in the penitentiary.

The uncontradicted evidence shows that on June 19, 1911, the negroes, including appellant and said Hammonds, had a celebration at Red Bird in Smith County; that the brother of said Hammonds, Jesse, was drinking, drunk, fussing and fighting there that day. That Chris attempted to take him away and succeeded in getting him on

his animal and started away with him, but he was so drunk that Chris could not get him away, and after getting off some distance from the grounds Jesse returned, running his animal through the crowd of men, women and children and into the team of one King— not appellant—and made the team break loose; that thereupon a wordy altercation occurred between some of them and probably some fights or assaults between the parties; that Chris Hammonds came up during this row and had, so some of the witnesses claim, more or less to do with it after it had been begun. But all the witnesses show that this row and fuss was over with and had been ended; that as it ended appellant left the crowd where it had occurred, went off some distance on the grounds where his coat, in which his pistol was concealed, was lying; that he picked up the coat and pistol and laid the coat across his arm; that the assaulted party, Chris Hammonds, had left the crowd where the fusses, assaults and fights had occurred, going towards or around a hall; that appellant after he prepared himself with his coat and pistol proceeded to go meeting Chris Hammonds, and all the State's witnesses show that when they got in some twenty or thirty feet of one another, when Chris Hammonds was doing nothing and saying nothing, that the appellant deliberately shot at him twice, the first time missing him and the second time striking him in the stomach; that Chris Hammonds at once put his hands to his stomach, turned and walked away some twenty or thirty steps and fell. He was taken home, a physician called and treated him, and the physician testified that if the ball had not struck something to deflect it it would have passed entirely through the appellant and perhaps produced death; that the wound inflicted was a serious one. Chris Hammonds and all the State's witnesses testified that he was doing nothing and saying nothing at the time appellant shot at him and shot him; that he had no knife or other weapon or anything whatever in his hand except his snuff box. The appellant's witnesses and appellant testified, most of them, that said Chris Hammonds had a knife in his hand and that he was advancing towards appellant with it at the time appellant first shot at him, and that appellant ordered him to stop and that he did not; that after he shot the first time and missed him, he ordered him to stop again and he did not but kept advancing towards him, when appellant shot the second time and struck him, which stopped him. About half the witnesses in the case swore that Chris Hammonds was drinking and drunk. The others swore that he was not. It will be seen, therefore, that the State's side made a clear case of assault with intent to kill against appellant, while appellant's made a clear case of self-defense.

The court in a full, fair and complete charge submitted these matters to the jury for a finding. The jury believed the State's side and convicted appellant.

Appellant requested fifteen special charges, all of which were refused. We have carefully gone over all of them and those which were

proper to have been given were substantially and correctly contained in the main charge of the court. None of the others should have been given and the court did not err in refusing to give any of them. It is unnecessary to state these several charges.

In addition appellant has thirteen bills of exceptions. Three of these are to some special paragraphs of the court's charge. We think it unnecessary to state them. We have carefully gone over all of them and none of them present reversible error. Eight of the others are exceptions to the refusal of some of the special charges requested. It is unnecessary to detail them. We have carefully gone over them and none of them show error. The other two pertain to different phases of the same matter.

The 11th in substance in full is as follows: That the State permitted Clifford Johnson to testify that Robert King, the brother of appellant, goes to see Theora Butler and they have been seen together often; that Robert King is Theora Butler's man and Theora Butler is Robert King's woman; that they rode on a spring seat together coming to Tyler; that Robert King quit his wife for Theora Butler. That appellant objected to this testimony, claiming it was irrelevant and immaterial and calculated to prejudice and inflame the minds of the jury against defendant. That if admissible at all, it was only for the purpose of attacking the credibility of the witness Theora Butler and that it was not admissible for any purpose against defendant. This is in substance the whole of this bill.

The other bill is in substance in full that the counsel for the State in the closing argument to the jury said: ''Theora Butler is the paramour of Robert King, the brother of the defendant.'' That appellant excepted to this and requested the court to withdraw it from the jury and to charge the jury not to consider it and presented to the court his written charge to that effect, which the court refused.

It will be seen that neither of these bills are full enough and do not present any matter sufficiently that therefrom this court can tell whether any error at all was committed. So that neither of these bills show any reversible error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 15, 1913.—Reporter.]