**Edward F. GODDE, Appellant,**

v.

**John H. WOOD, Jr., Appellee.**

**No. 835.**

Court of Civil Appeals of Texas, Corpus Christi.

April 30, 1974.

Rehearing Denied May 23, 1974.

436

David B. Connery, Jr., Rockport, for appellant.

Melvin A. Krenek, San Antonio, Wm. H. Bloch, Rockport, for appellee.

## OPINION

BISSETT, Justice.

This is a statute of limitations case. Involved is a debt alleged to be due under an oral building contract. Edward F. Godde, the contractor, filed suit on December 16, 1971 against John H. Wood, Jr., the owner, to recover $6,547.05 claimed to be due him for building a home for defendant on Key Allegro Island, Rockport, Texas. After a jury trial, the trial court rendered judgment that plaintiff take nothing by his suit on the ground that plaintiff's cause of action accrued more than two years before commencement of suit, and was, therefore, barred by Article 5526, Vernon's Ann.Civ. St., and that the lien theretofore asserted

by plaintiff against defendant's property was null and void. Plaintiff has appealed. We affirm. The parties will be referred to as plaintiff and defendant as they were in the trial court.

Plaintiff alleged that he and defendant entered into an oral contract for the building of a house for defendant, which called for him to furnish the "time, labor and materials" required under the plans and specifications, that he fully performed under the contract, and that defendant refused to pay him $6,547.05, which he alleged to be the balance due him under the contract.

Defendant, in addition to pleading that plaintiff agreed to construct and complete the home on or prior to November 15, 1969, for a maximum contract price of $27,000.00, also raised the defense of the two year statute of limitations. Plaintiff, in his supplemental petition, alleged that defendant was absent from the State of Texas during the month of December, 1969, and that he was entitled to have excluded from the limitation period all of the time during which defendant was out of the State.

The case was submitted on 10 special issues. The jury, in response to Special Issues 1, 2, 4, 5 and 10, found: that the parties entered into an oral contract on or about May 15, 1969, whereby plaintiff undertook to construct a residential dwelling and other improvements for defendant in accordance with certain plans and specifications furnished by defendant (Special Issue 1); that such agreement obligated defendant to make progress payments to plaintiff and ultimately to pay to plaintiff the total cost of the materials used, the plaintiff's time, labor and related costs (Special Issue 2); that defendant was indebted to plaintiff on December 26, 1969, in the amount of $6,547.05 (Special Issues 4 and 5); and that the house had not been finished on or before December 11, 1969 (Special Issue 10). Those answers are not attacked in this appeal by anyone.

The jury, in response to Special Issues 3, 6, 7, 8 and 9, further found: that plaintiff "constructed the residential dwelling and related improvements for the defendant and completed the obligations required of him" under the oral contract on December 19, 1969 (Special Issue 3); that plaintiff "finished the work comtemplated by the parties' oral contract and delivered possession thereof to the defendant Wood on or prior to November 17, 1969" (Special Issue 6); that plaintiff "finished the work contemplated by the parties' oral contract and delivered possession thereof to defendant Wood on or prior to December 11, 1969" (Special Issue 8); that defendant, in his letter of November 24, 1969 to plaintiff, notified plaintiff that he did not intend to make any further payments to plaintiff (Special Issue 7); and, that defendant's wife advised plaintiff on December 12, 1969 that defendant, in effect, did not owe plaintiff any more money for building the home (Special Issue 9).

Neither plaintiff nor defendant objected to the court's charge, to the form or substance of any issue contained therein, or to the submission of any issue. No one requested the submission of any additional issues.

Plaintiff relied solely upon the alleged oral agreement. He did not plead in the alternative for recovery on quantum meruit for the construction of defendant's home, or for the value of any extra or additional materials, labor or services furnished or performed in addition to those required of him under the oral agreement. He requested no issue thereon and obtained no finding as to the reasonable value of the work generally, or of such "extras" or "additional items". No contention was made in the trial court and none is made in this Court that the parties did not enter into a contract for the building of defendant's home.

Plaintiff, by seven points of error, complains that the trial court erred in refusing to disregard the jury's answers to Special

Issues 6 and 8, because there was no evidence to support such findings (Points 1 and 3), and that such findings were against the overwhelming weight and preponderance of the evidence (Points 2 and 4); that the trial court erred in refusing to disregard the answers to Special Issues 7 and 9 because the issues were evidentiary in nature and were immaterial as a matter of law (Points 5 and 6); and, that the trial court erred in overruling plaintiff's motion for a mistrial because there was a fatal and irreconcilable conflict between the jury's finding in response to Special Issue No. 3 and the jury's findings in response to Special Issues 6 and 8 (Point 7).

During the course of construction, progress payments, pursuant to plaintiff's requests, in the total amount of $32,000.00 were made by defendant to plaintiff. The last of such payments, in the sum of $4,000.00, was made on November 12, 1969. The contract did not provide for fixed dates for the making of progress payments, nor did it specify the date final payment was to be made to plaintiff.

There is evidence from defendant, his wife, and from disinterested persons, that at sometime between November 8 and November 11, 1969, plaintiff represented to defendant that the $4,000.00 would be the last, full and final payment due him under the contract, and that plaintiff assured defendant that if defendant paid him that sum of money that he (plaintiff) would pay all outstanding bills for labor and materials and all other completion costs.

Defendant, on November 24, 1969, wrote plaintiff a letter, wherein the statement was made: ". . . Of course I now expect you to completely finish my house for the amounts which I have paid to you."

On December 12, 1969, plaintiff asked defendant's wife for $600.00, which he said he needed in order to pay $400.00 to the painters as their wages for the work week which ended on that day, and $200.00 to "clean up what was left there for incidentals". Mrs. Wood refused and, in her own

words, told plaintiff: "We're not going to pay you another dime, because we've put out all the money we can."

Plaintiff, in his brief, says that the fact of completion of the project on December 19, 1969 "is established by the only credible evidence of record, namely invoices for material supplied by Bracht Lumber Company on December 19, 1969 . . . as augmented by the plain fact that at least one subcontractor, Moody Electric, billed plaintiff for the 'balance on job complete' in the sum of $250.00 on December 20, 1969". We disagree.

Plaintiff, when asked on cross-examination if he alleged in his petition that the work required of him under the oral contract had been substantially completed in November, 1969, answered:

"You said 'completed in November'. It wasn't completed. We had to finish up the painting outside, which the weather was holding us up on. And the little incidentals that she (Mrs. Wood) thought of later. When I moved to these other jobs, I thought it was complete."

It is undisputed that plaintiff commenced other jobs sometime prior to December 5, 1969. When asked: "And you were totally finished by Thanksgiving?", he replied:

"No, other than painting outside, and little odds and ends, and he (Mr. Wood) was satisfied with that."

Plaintiff was asked by defendant's counsel to state exactly what was done on the home after November 23, 1969. In addition to saying that the painters "touched up on the inside" and that the "touching up" was done "just before—around the 15th of December, somewhere thereabouts", his answer was:

"Well all I did out there was put that dryer in when it came . . . The dryer and the electric heater . . . Alex Lerma repainted some of the outside railing and bannisters because the foggy weather had caused the original paint to come off. . . ."

When asked on direct examination the date that the *entire project* was completed, plaintiff stated:

"Oh, let's see, the last part of December or around . . . well, I returned some stuff there to Wagley's . . . or to Bracht's, I mean, after Christmas. I got my last credit check . . . credit slip".

The record shows that the last credit slip from Bracht was made on December 23, 1969.

Bracht Lumber Company furnished materials in the amount of $14,277.67. Plaintiff paid Bracht $10.000.00 on account. All of the materials were delivered before December 11, 1969, with the exception of two quarts of paint ($7.28) which were bought on December 13, 1969, and a gallon of paint ($5.62) which was purchased on December 19, 1969. According to plaintiff's own testimony, the painter, on or after December 12, 1969, was ordered to paint the "railing that the water or the dew had washed off" and to do "some touching up around there on the cabinets or something inside". Plaintiff was invoiced by Bracht on December 29, 1969, for the balance of $4,277.67 due on the materials bill.

Moody Electric Company, the electrical subcontractor, was paid a total of $1,200.00 (for wiring the house and renovating the chandeliers) up to and including November 21, 1969. On December 20, 1969, it invoiced plaintiff for $250.00, with the notation "balance on job complete". After examining the entire statement of facts (922 pages) and the exhibits (73), we conclude that this Moody Electric Company invoice was for materials and services in connection with the installation of 1) an electric outlet at the fish cleaning stand back of the house, 2) a conduit for a battery charger alongside the boat dock, and 3) an electric plug and light socket on a creosote pier piling located on the canal front. The evidence shows that such materials and services were furnished prior to December 11, 1969. We hold that the materials and services covered by Moody's invoice dated

December 20, 1969 were not required by the oral contract.

On December 26, 1969, plaintiff demanded an additional $6,547.05 of defendant as the final sum of money due him on the contract, which defendant refused to pay. No useful purpose will be served by a discussion of all the invoices that make up the demand. It did, however, include the Bracht and Moody bills as well as a claim by plaintiff for $190.00 due Alex Lerma for labor (painting). All of the other invoices involved in plaintiff's demand were either for services and materials that were furnished under the oral contract before December 11, 1969, or for materials and services that had no connection with the contract, or both.

Apparently, the $190.00 for painting included $110.00 for painting defendant's furniture that was not called for by the contract, and which was paid by defendant directly to Lerma in 1970. Plaintiff testified that the cost of "touching up" was no more than $25.00. Presumably, the remaining $55.00 was the cost of repainting the outside stairs, railing and bannisters.

Defendant testified that the house was completed in accordance with contract specifications by November 17, 1969 except for some painting and the tarvia paving, (which tarvia paving was not required by the contract), and that the outside stairs, railing and bannisters had been completely repainted by December 14, 1969. Several disinterested witnesses testified that the house was finished by November 11, 1969. There is no testimony from plaintiff, or from anyone else, that the work required by the oral contract was not finished until December 19, 1969, or that any work was performed thereon on that day. The paint that was obtained on December 19, 1969 was not used to complete the painting required by the oral contract, but, evidently, was purchased to correct a slight or trivial defect in the original painting that had developed as a consequence of adverse weather conditions which occurred in late November and early December, 1969. The repainting, regardless of the date when it was done, was strictly remedial in scope. There is no evidence that the paint which was purchased on December 19, 1969 was ever actually used in repainting any part of the improvements.

Defendant admitted that "extras" were incorporated in the improvements in December, 1969, but he says that they were not furnished by plaintiff by virtue of the contract upon which suit was brought, but that all such items were additional to the materials, labor, or services required by the oral contract to be supplied by plaintiff. Such "extras", according to defendant, consisted of: 1) the installation of a clothes washer and dryer sometime after December 8, 1969, which appliances were purchased by defendant; 2) the enlargement of a platform in the washroom area for the washer and dryer; and 3) the installation of electric plugs and outlets at the fish cleaning stand, on the boat dock, and on pier pilings along the canal front. Defendant further admitted that plaintiff, in December, 1969, did do some repainting. The inference, however, from his testimony is that the repainting was completed by December 14, 1969.

Plaintiff says in his brief that during the time "Alex Lerma, the painter, finished up the painting" that defendant requested "at least three additional things: finishing up of the storage and washroom area, installation of the dryer yet to arrive, and 'also, if it is not too late' the installation of an all weather plug on top of the pier pilings and electrical work on his fish cleaning stand". There is no evidence that such "extras" or "additional items", constituted any part of the specifications incidental to the oral contract, and there is no evidence that those items were furnished as a result of changes in the original specifications which were authorized by defendant.

The overwhelming weight and preponderance of the evidence supports defendant's contentions that at the time the oral contract was made it was understood by

both parties that the house was to be totally finished, paid for and possession delivered to defendant by November 15, 1969, and that defendant was fully moved into the house by November 11, 1969. The builder's risk policy of insurance was cancelled on November 17, 1969, and a home owners' hazard insurance policy was issued to defendant, effective November 17, 1969.

■ In an action for debt under an oral contract, limitations begin to run when the cause of action accrues. Article 5526, V. A.C.S. That statute applies to this case. "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued". Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946); Dunn v. Reliance Life & Accident Insurance Company, 405 S.W.2d 389 (Tex.Civ. App.—Corpus Christi, 1966, writ ref'd n. r. e.). The cause of action does not accrue until facts exist which authorize the claimant to seek relief in a court of competent jurisdiction from the person due to make reparation. Hartman v. Hartman, 135 Tex. 596, 138 S.W.2d 802 (1940); Williams v. Pure Oil Co., 124 Tex. 341, 78 S. W.2d 929 (1935); Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629 (1912).

Since defendant invoked the provisions of Article 5526, V.A.C.S., as a defense to plaintiff's suit, the debt sought to be recovered is barred if plaintiff filed his suit more than two years after his cause of action accrued. Defendant testified that he left the State of Texas on December 11, 1969, spent December 12 and 13 in the States of New York and New Jersey, and returned to Texas on December 14, 1969. There is some indication that defendant was in New York City on December 15, 1969, and that he returned to Texas on that day. That, however, was not conclusively established by the evidence. Plaintiff did not request a jury issue on the number of days that defendant was absent

from the State, and no complaint was lodged for the failure to submit any such issue. We hold that the evidence shows that defendant was absent from the State for two days, and no more. Therefore, his suit is barred under the statute as a matter of law if the record reveals that his cause of action under any legal theory accrued on or at any time prior to December 13, 1969.

■ Under the record before us, both plaintiff and defendant clearly contemplated a continuing contract, i. e., the contract was to continue until plaintiff had completed the improvements in accordance with the plans and specifications. Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim will be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished. Alexander & Polley Construction Co. v. Spain, 477 S. W.2d 301 (Tex.Civ.App.—Tyler 1972, n. w. h.); City and County of Dallas Levee Improvement Dist. v. Halsey, 202 S.W.2d 957 (Tex.Civ.App.—Amarillo 1947, n. w. h.); Rich v. Arancio, 277 Mass. 310, 178 N.E. 743 (1931); 13 Am.Jur.2d, Building and Construction Contracts, § 114, pp. 106–107; 58 Am.Jur., Work and Labor, § 56, pp. 556–557.

■ The rule of "substantial performance" with respect to building contracts has long been recognized in Texas. By reason of this rule, a contractor who has in good faith substantially performed a building contract is permitted to sue under the contract, substantial performance being regarded as full performance, so far as a condition precedent to a right to recover thereunder is concerned. Graves v. Allert & Fuess, 104 Tex. 614, 142 S.W. 869 (1912); Atkinson v. Jackson Bros., 270 S. W. 848 (Tex.Commn.App.1925); South Texas Building Co. v. Ideal Engineering, Inc., 402 S.W.2d 292 (Tex.Civ.App.— Houston 1966, writ ref'd n. r. e.); Hen-

nemuth v. Weatherford, 278 S.W.2d 271 (Tex.Civ.App.—Waco 1955, writ ref'd n. r. e.); 10 Tex.Jur.2d, Building Contracts, § 21, pp. 25–26.

There is ample evidence of probative value that the work contemplated by the oral contract was substantially finished on or prior to both "November 17, 1969" and "December 11, 1969", as found by the jury in their answers to Special Issues 6 and 8. Those answers are not against the overwhelming weight and preponderance of the evidence, as urged by plaintiff in his second and fourth points of error. Plaintiff admits in his pleadings that the house was "substantially" completed in "November, 1969". We further hold that the evidence, when viewed in its entirety, conclusively shows that the work contemplated by the oral contract was totally completed by December 12, 1969.

We next consider plaintiff's point of error concerning the asserted conflict between the jury's answer to Special Issue 3 (that plaintiff completed the work contemplated by the contract on December 19, 1969), and the answers to Special Issues 6 and 8 (that plaintiff completed the work contemplated by the agreement on or before November 11, 1969, and on or before December 11, 1969). If there is a conflict between the answers to special issues, we are required to examine the entire verdict returned by the jury and to indulge every reasonable presumption in favor of the judgment that was rendered on the verdict. See 57 Tex.Jur.2d, Trial, § 549, pp. 277–287. Where the jury findings are reasonably susceptible of two constructions, one of which would reconcile the findings in favor of the judgment, such reconciliation is mandatory in favor of the judgment that was rendered on the jury verdict. Missouri Pacific Railroad Company v. Tide LPG, Inc., 462 S.W.2d 106 (Tex.Civ. App.—Corpus Christi 1971, writ ref'd n. r. e.). Before a judgment based on a verdict containing conflicting answers will be set aside, it must be shown that the conflict between the answers is such that one answer would establish a cause of action, while the other would destroy it. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949).

There are three reasons why plaintiff's point relating to conflicting answers cannot be sustained. In the first place, the answer to Special Issue 3 has no support in the evidence. It was not necessary to submit that issue. The trial court properly disregarded the answer to that issue. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup.1966); Angelina County Lumber Company v. Reinhardt, 285 S.W.2d 446, 450 (Tex.Civ.App. —Beaumont 1955, writ ref'd n. r. e.). In the second place, the apparent conflict can be reconciled. Special Issue 10, about which there is no complaint, inquired if "the Wood house had been finished by the Contractor Godde on or before December 11, 1969"? The jury said "No". That issue, however, was not confined solely to an inquiry of work furnished under the oral contract, but the issue of completion of the "work" generally was submitted. It is reasonable to conclude that the jury found by their answer to Special Issue 10 that only the "work" required by the "extras", had not been finished on or prior to December 11, 1969. Special Issue 3 inquired into the completion date of the house and "related improvements" under the contract. Special Issues 6 and 8 inquired only into the completion date of the "work" contemplated by that contract. The jury could have construed "related improvements" as being the admitted "extras". Moreover, as the jury found that the house was finished under the oral contract and possession delivered "on or prior to November 17, 1969", it is axiomatic that the house was still completed under the contract, "on or prior to December 11, 1969", and also "on December 19, 1969". An irreconcilable conflict between the answers does not exist. In the third place, we do not find in the record that plaintiff's motion for mistrial on account of the asserted conflict between the

answer to Special Issue 3, and the answers to Special Issues 6 and 8, although filed on May 14, 1973, was ever presented to or acted on by the trial judge. In that state of the record, nothing is presented for appellate review and we cannot consider the point. Murphy v. Maroney, 456 S.W.2d 787 (Tex.Civ.App.—Waco 1970, writ ref'd n. r. e.); Barnett v. Woodland, 310 S.W.2d 644 (Tex.Civ.App.—Austin 1958, writ ref'd n. r. e.); Finney v. Finney, 164 S.W.2d 263 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w. o. m.).

■ Under the general rule, when money is payable on demand, it is payable immediately, and no demand is necessary to start the running of the statute of limitations. Cook v. Cook, 19 Tex. 434 (1857); Foreman v. Graham, 363 S.W.2d 371 (Tex.Civ.App.—Beaumont 1962, n. w. h.). However, if a demand is an integral part of a cause of action, or a condition precedent to the right to sue, the statute does not begin to run until a demand is made, unless the demand is waived or is unreasonably delayed. Condor Petroleum Co. v. Greene, 164 S.W.2d 713 (Tex.Civ.App.—Eastland 1942, writ ref'd w. o. m.); Hansen v. Hidalgo & Cameron Counties Water C. & I. D., 319 S.W.2d 765 (Tex.Civ.App.—San Antonio 1959, n. w. h.); 54 C.J.S. Limitations of Actions § 125b, p. 41. In the case at bar, demand for payment was not, by the terms of the contract between the parties, made a condition precedent to plaintiff's right to sue.

■ Plaintiff, in his brief, argues that limitations "does not begin to run until the time for Wood's performance was at hand on Godde's making demand for payment, and Wood's refusal, on December 26, 1969". However, we cannot consider that argument in disposing of this appeal. Plaintiff's brief does not contain a point where it is contended that the trial court erred in its conclusion and holding that plaintiff's cause of action is barred by the two 'year statute of limitations. An exami-

nation of all points brought forward, leads us to hold that they are not broad enough to be equivalent of a point that the trial court erred in holding that plaintiff's cause of action was barred by limitations. The first six points complain of the asserted error in refusing to disregard the jury's answers to Special Issues 6, 7, 8 and 9; the seventh and last point of error concerns the asserted error in overruling plaintiff's motion for mistrial because of conflict in certain answers. None of the points furnish a basis that supports the argument.

■ Plaintiff's position in this matter constitutes unassigned error. "The right of an appellate court to reverse a trial court judgment on unassigned error is limited to situations in which the error can properly be classified as 'fundamental error'". Newman v. King, 433 S.W.2d 420 (Tex.Sup.1968). Generally speaking, fundamental error is either error which directly or adversely affects the interest of the public generally, Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947), or error in assuming jurisdiction where none exists, McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957). Errors occurring in the trial process and errors which a trial judge may make in deciding issues or making conclusions of law during the course of a trial have been consistently held not to be fundamental. State v. Sunland Supply Co., 404 S.W.2d 316 (Tex.Sup.1966); Kimbrough v. Walling, 371 S.W.2d 691 (Tex.Sup.1963). The complaint made by plaintiff did not affect the interest of the public generally. Neither did it deprive the trial court of jurisdiction, once obtained, to proceed to judgment. Therefore, since fundamental error is not presented and as plaintiff did not attack the trial court's conclusion by a point of error, his right to complain on the ground evidenced by the argument was waived. City of Deer Park v. State, 154 Tex. 174, 275 S.W.2d 77 (1955); Dorbandt v. Jones, 492 S.W.2d 601 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.).

**444**

We do not deem it necessary to write at length on either points 5 or 6. Suffice it to say, the jury finding in response to Special Issue 7, that defendant, in his letter of November 24, 1969, "notified plaintiff Godde that he did not intend to make any further payments to Plaintiff Godde for building defendant's home under the house building contract", and the jury finding in response to Special Issue 9, "that defendant's wife (Mrs. Wood) on December 12, 1969, advised plaintiff Godde that the Woods, in effect, did not owe plaintiff Godde any more money for building the home on the oral home building contract", in view of the favorable fact findings for defendant relating to the date that the improvements were finished in accordance with the oral contract (which formed one basis for the rendition of the judgment that was rendered), could not have resulted in any harm to plaintiff. Moreover, it is established conclusively by the evidence that the house was fully completed no later than December 12, 1969 (when the painters finished), which formed another basis for the conclusion and holding that plaintiff's cause of action was barred by limitations. This Court must affirm the judgment of the trial court if the judgment can be upheld on *any* legal theory that finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968). The jury's answers to Special Issues 7· and 9 did not cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

The conclusion by the trial court that "plaintiff's alleged cause of action accrued more than two years before the commencement of this suit and that the same is barred by and under Article 5526, Revised Civil Statutes of Texas" is supported by the record. The debt being barred, the lien dependent thereon is unenforceable and was properly decreed to be null and void. University Savings & Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287 (Tex.Sup.1967); Hubert Lumber Co. v. Baumgart, 464 S.W.2d 728 (Tex.Civ.App.—Houston 1st Dist.1971, n. w. h.).

We have carefully reviewed all the evidence. All of the points of error brought forward by plaintiff have been considered, and all are overruled.

The judgment of the trial court is affirmed.