

# NUMBER 13-15-00095-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**NADIR N. ALI AND MUMTAZ ALI,**                              **Appellants,**

**v.**

**FLESSNER ENTERPRISES, INC.,**                                  **Appellee.**

---

### On appeal from the 135th District Court
### of DeWitt County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellants Nadir N. Ali and Mumtaz Ali appeal the trial court's judgment in favor of appellee Flessner Enterprises, Inc. (FEI). The trial court awarded damages in the amount of $145,543.37 and $4,500.00 in attorneys' fees after a trial before the bench. The Alis challenge the trial court's judgment by four issues. We affirm.

## I. BACKGROUND

The Alis purchased a gas station by the name of FasTrak Express in DeWitt County, Texas. Nadir entered into an oral agreement with Rodney Flessner, the president and sole owner of FEI, by which Flessner agreed to redo the electrical wiring in the FasTrak Express building. Because he was unable to determine the amount of work or the specific parts that would be necessary without beginning the "tear-out" process, Flessner did not provide Nadir with an estimate.[1] Flessner testified that when he began the work he was unaware of the scope of the job.

There was conflicting testimony between Nadir and Flessner regarding the initial price, if any, upon which they agreed. Flessner testified that he informed Nadir that labor would run $3,000.00 a week; Nadir testified that Flessner told him that the project would not cost more than $40,000.00–$45,000.00. What is undisputed is that on March 30, 2009, FEI invoiced FasTrak Express, attention Nadir and Mumtaz, for $145,543.37.[2] The invoice indicated that FEI began work in 2007 and that the last day of billed work occurred on March 16, 2009. Flessner testified that he continued to work at the premises through June 2009 when he completed "warranty work" and "punch list things."

Though Nadir disputed when he received the March 30 invoice, he agreed that he never paid any additional monies to FEI. FEI did not send the Alis a demand letter and did not place a lien on the property. Instead, FEI waited until March 28, 2013 to file a

---

[1] Flessner testified that he redid one-hundred percent of the electrical wiring at the FasTrak premises without the aid of blueprints or plans.

[2] The invoice credited the Alis for $20,000 they had already paid to FEI.

2

suit on a sworn account against the Alis.[3]   The Alis filed a verified denial and asserted the statute of limitations and the statute of frauds as affirmative defenses.

On October 17, 2014, the parties tried their case to the bench of the 135th District Court.   On December 3, 2014, the trial court rendered judgment in favor of FEI and entered a judgment requiring the Alis to pay $145,543.37 in damages and $4,500.00 in attorneys' fees.   The Alis timely requested findings of fact and conclusions of law from the trial court on December 17, 2014, and filed their notice of past due findings of fact and conclusions of law on January 8, 2015.   The trial court entered findings of fact and conclusions of law on FEI's claim on February 6, 2015.   The Alis requested supplemental findings of fact and conclusions of law on their statute-of-limitations affirmative defense. The trial court did not enter any additional findings or conclusions.   This appeal followed.

## II.    TEXAS RULE OF CIVIL PROCEDURE 298

By their third issue, which we address first, the Alis contend that the trial court erred when it refused to make additional findings of fact and conclusions of law pertaining to their statute-of-limitations affirmative defense.[4]   Specifically, they contend that Texas Rule of Civil Procedure 298 required the trial court to make their requested findings because they were supported by the record and were not contrary to previous findings. See TEX. R. CIV. P. 298.

---

[3] Though the suit was tried as a suit on a sworn account before the trial court, both parties address the issues in the context of a breach of contract claim.   We note that our analysis of the substantive issues on appeal is not impacted by this distinction because the basis of the debt action was the alleged oral contract between the parties.

[4] Because the Alis' third issue has the potential to affect our review of their first and second issues, we address it first.

3

### A. Applicable Law

The purpose of requesting findings of fact and conclusions of law from the trial court is to narrow the issues on appeal and to limit the scope of the presumption of validity in favor of the judgment. *See Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 253 (Tex. App—Houston [14th Dist.] 1999, pet. denied) (recognizing that there is a general presumption of validity extending to the judgments of courts of general jurisdiction). Rule 298 provides that "[n]o findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions." TEX. R. CIV. P. 298. When a party requests additional findings and conclusions, the trial court is obliged to make the additional findings and conclusions, if appropriate. *See id.*; *Vickery,* 5 S.W.3d at 256.

Failure to make additional findings and conclusions may constitute reversible error if the appellant is prevented from adequately presenting the matter being complained of on appeal. *Vickery,* 5 S.W.3d at 256; *see Tamez v. Tamez*, 822 S.W.2d 688, 692–93 (Tex. App.—Corpus Christi 1991, writ denied). However, the failure to make additional findings is not prejudicial to the appellant if the refusal does not prevent an adequate presentation on appeal. *Vickery,* 5 S.W.3d at 256–57*; see Tamez*, 822 S.W.2d at 692–93. In other instances, the trial court's omission of a requested finding works to negate the presumption of validity in favor of the judgment. *See Vickery,* 5 S.W.3d at 253 ("The presumption of validity is logically rebutted only where the record suggests the trial court was aware of the omission and its alleged significance, yet *deliberately* omitted the element from its written findings.").

**B.    Discussion**

The Alis timely requested findings of fact and conclusions of law from the trial court. Upon receiving the trial court's findings and conclusions, they requested additional findings and conclusions pertinent to their statute-of-limitations affirmative defense. The trial court did not enter the additional findings and conclusions requested by the Alis. The Alis contend on appeal that the trial court's failure to enter the requested findings and conclusions constitutes reversible error.

The trial court's failure to enter the additional requested findings of fact and conclusions of law will only constitute reversible error if we determine the Alis are prevented from adequately presenting their statute of limitations issue on appeal. *See id.* at 256; *Tamez*, 822 S.W.2d at 692–93. We note that there are complete reporter's and clerk's records before this Court. *See Vickery,* 5 S.W.3d at 251. From the record, we can clearly identify the date the lawsuit was filed, the dates of the invoiced work, and all testimony relating to when the work was performed. Therefore any additional findings of fact and conclusions of law as to limitations are unnecessary because we can determine when the cause of action accrued as a matter of law. *See Hunt Oil Co. v. Live Oak Energy, Inc.,* 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009, pet. denied) (recognizing that the statute of limitations begins to run when the cause of action accrues and a determination of when the cause of action accrues is a question of law).

Because the trial court's refusal to enter additional findings of fact and conclusions of law on the Alis' statute of limitations affirmative defense has not prevented the Alis from adequately presenting their issues on appeal, no error occurred. *See Vickery,* 5 S.W.3d

5

at 256; *Tamez*, 822 S.W.2d at 692–93.   We overrule the Alis' third issue.

### III.   STATUTE OF LIMITATIONS

By their first issue, the Alis contend that the trial court erred in refusing to apply the applicable statute of limitations to bar FEI's claims against them.   Specifically, the Alis contend that the limitations period began to run when the contract was substantially complete, rendering FEI's suit untimely.

### A.   Applicable Law

The Texas Civil Practice and Remedies Code provides the relevant limitation period by which a plaintiff must file suit on a debt.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (West, Westlaw through 2015 R.S.).   It provides that a person must bring suit on a debt claim "not later than four years after the day the cause of action accrues." *Id.*; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).   A cause of action accrues at the time facts come into existence which authorize a claimant to seek a judicial remedy.   *See Duzich v. Marine Office of Am. Corp.,* 980 S.W.2d 857, 870 (Tex. App.—Corpus Christi 1998, pet. denied).   In this context, we look to the case law pertaining to continuing construction contracts to determine when the statute of limitations accrued on FEI's claim. *See Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 381–82 (Tex. App.—Fort Worth 1994, writ denied) (citing *Godde v. Wood,* 509 S.W.2d 435, 441 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.).   The question of when a cause of action accrues is a question of law for this Court to decide.   *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990).

A construction contract is generally a continuing contract under which "the

6

contemplated performance and payment is divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed." *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 381–82 (Tex. App.—Fort Worth 1994, writ denied) (citing *Godde v. Wood,* 509 S.W.2d 435, 441 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.); *City & County of Dallas Levee Improvement Dist. v. Halsey, Stuart & Co.,* 202 S.W.2d 957, 961 (Tex. Civ. App.—Amarillo 1947, no writ)). On a continuing contract, limitations run at the earlier of: (1) the completion of the work; (2) the termination of the contract under its own terms; or (3) the anticipatory repudiation of the contract by one party and the adoption of the repudiation by the other party. *Hubble*, 883 S.W.2d at 382; *see Godde*, 509 S.W.2d at 441 ("Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim will be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished.").

### B. Discussion

Our resolution of this issue hinges on our determination of when FEI's cause of action accrued for limitations purposes. The Alis contend that FEI's cause of action accrued on March 16, 2009, because that was the date on which the work was substantially completed. *See, e.g., Hubble,* 883 S.W.2d at 382 (recognizing that limitations can begin to run upon the completion of the work on a continuing contract).

However, the Alis did not cite any case, and we found none, supporting their proposition that a debt accrues for limitations purposes upon a contractor's substantial

7

performance of the contract.[5]   The applicable case law cited by the Alis provides that the cause of action does not accrue until:   the "final completion" of the work[6]; the contract is "finished"[7]; the contract has "concluded"[8]; or the contract has been "fully performed."[9] Therefore, we will review the record to determine when the oral contract between the Alis and FEI was completed to determine when FEI's cause of action accrued.

It is undisputed that FEI did not present an invoice to the Alis until March 30, 2009. The invoice directed the Alis that payment was due upon receipt.   The invoice indicated that the last day of billed work occurred on March 16, 2009.   Flessner testified that he continued working at the FasTrak Express performing services such as "warranty work" and "punch list things" through June of 2009.   However, the additional services were performed at no additional cost to the Alis.   FEI filed suit on March 28, 2013.

---

[5] Substantial performance does not apply in this case because it is an equitable legal theory that (1) allows a contractor to recover its expenses even in circumstances where the job was not fully completed, and (2) provides a contractor an affirmative defense to a breach of contract claim.   *See Smith v. Smith*, 112 S.W.3d 275, 278–79 (Tex. App.—Corpus Christi 2003, pet. denied) (recognizing that "substantial performance allows a party to bring a contract action to recover the full performance price, less the cost of remedying those defects that can be fixed" and that "substantial performance can be used . . . as a defense to a breach of contract claim"); *see also Godde*, 509 S.W.2d at 441 (recognizing that a contractor that has substantially performed a contract is permitted to sue under the contract "so far as a condition precedent to a right to recover" is concerned).

[6] *See Alexander & Polley Const. Co. v. Spain,* 477 S.W.2d 301, 303 (Tex. App.—Tyler 1972, no writ) ("Where a continuing contract is contemplated, the cause of action for the breach thereof does not accrue until *final completion* thereof.") (emphasis added).

[7] *See Godde v. Wood,* 509 S.W.2d 435, 441 (Tex. App.—Corpus Christi 1974, writ ref'd n.r.e.) ("Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been *completed*), the claim will be treated and considered as an entire demand and limitations will not commence to run until the contract has been *finished.*") (emphasis added).

[8] *See id.*

[9] *See Intermedics Inc. v. Grady,* 683 S.W.2d 842, 845–46 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("If the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is *fully performed*, unless one party refuses to fulfill the contract or prevents the other party from performing.") (emphasis added).

8

The Alis contend that FEI's cause of action accrued on March 16, 2009, because it was the last day charged work was performed on the premises and was the date by which FEI substantially performed the contract. However, the Alis' position would have FEI's debt action accrue before FEI even submitted an invoice for payment. As the basis for FEI's claim is the Alis' failure to pay the invoiced amount, we cannot agree with the Alis that FEI's claim accrued approximately two weeks before payment was formally requested. *See Hubble*, 883 S.W.2d at 382; *Godde*, 509 S.W.2d at 441. Because limitations on a continuing contract run at the *earlier* of (1) the completion of the work; (2) the termination of the contract under its own terms; or (3) the anticipatory repudiation of the contract by one party and the adoption of the repudiation by the other party, we determine that limitations ran, at the earliest, when the contract terminated under its own terms on March 30, 2009—the day that FEI invoiced the Alis noting that payment was due upon receipt. *See Hubble,* 883 S.W.2d at 382. At that time facts came into existence which authorized FEI to seek a judicial remedy. *See Duzich,* 980 S.W.2d 870.

Because FEI filed suit within four years of the date its cause of action accrued, it was within the limitations period set forth in the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3); *Hubble*, 883 S.W.2d at 382; *Godde*, 509 S.W.2d at 441. The trial court did not err in refusing to apply a statute-of-limitations bar to FEI's claims against them. We overrule the Alis' first issue.

## IV. STATUTE OF FRAUDS

By their second issue, the Alis challenge the legal sufficiency of the evidence supporting the trial court's judgment in favor of FEI because they contend the oral contract

9

that formed the basis of FEI's debt action violated the statute of frauds as a matter of law. Specifically, the Alis argue that the "lack of a written contract places the agreement squarely within the statute of frauds and negates the trial court's judgment" and that "the oral agreement lacks the specificity and definiteness required for even an oral contract to be enforceable."[10]  FEI responds that the oral contract was for services and therefore not subject to the statute of frauds, and that it was fully performed.

Whether a contract falls within the statute of frauds is a question of law that we review de novo.  *Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Texas's version of the Uniform Commercial Code's (UCC) statute of frauds is set forth in section 2.201 of the Texas Business and Commerce Code.  Section 2.201(a) states, in pertinent part:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

TEX. BUS. & COMM. CODE ANN. § 2.201(a) (West, Westlaw through 2015 R.S.).

To determine whether the statute of frauds applies we must ask whether the oral contract was a contract for the sale of goods or for services.  *See Cont'l Casing,* 38

---

[10]  Though not raised as a separate issue, the Alis also contend that the oral contract failed because it did not satisfy all elements of contract formation; specifically that the price was not agreed to by the parties.  *See Labor Ready Cent. III L.P. v. Gonzalez,* 64 S.W.3d 519, 522 (Tex. App.—Corpus Christi 2001, no pet.) (noting that a "meeting of the minds" as to the essential elements is necessary for contract formation).  We construe the Alis' contention to challenge the legal sufficiency of the evidence supporting the trial court's finding in favor of FEI.  The record evidences that Flessner testified that he quoted Nadir $3,000.00 a week in labor costs before beginning the job.  We determine that there was legally sufficient evidence in the record to support the trial court's implied finding that the parties agreed on the required terms to the contract.  *See id.*; *see also Kroger Tex. Ltd. v. Suberu,* 216 S.W.3d 788, 795 (Tex. 2006) ("A challenge to the legal sufficiency of the evidence will be sustained when the evidence offered to establish a vital fact does not exceed a scintilla.").

S.W.3d at 787. Under the UCC, goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . ." TEX. BUS. & COMM. CODE ANN. § 2.201(a). A "sale" consists of "the passing of title from the seller to the buyer for a price," and a "contract for sale" includes a contract to sell goods in the future. *Id.* § 2.106(a) (West, Westlaw through 2015 R.S.). "Where a contract contains a mix of goods and services, the UCC applies if the sale of goods is the 'dominant factor' or 'essence' of the transaction." *See Tarrant County Hosp. Dist. v. GE Automation Serv., Inc.,* 156 S.W.3d 885, 893 (Tex. App.—Fort Worth 2005, no pet.); *Cont'l Casing,* 38 S.W.3d at 787; *see also, e.g., WesTech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 197 (Tex. App.—Austin 1992, no writ). Thus, to determine whether the UCC's statute of frauds applies here, we must decide whether the dominant factor or essence of the agreement is a "contract for the sale of goods." *E. Hill Marine, Inc. v. Rinker Boat Co.,* 229 S.W.3d 813, 819 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Cont'l Casing,* 38 S.W.3d at 787).

Nadir testified on direct-examination that he hired Flessner to "do work for him" and further clarified that Flessner was hired to do electric work and redo the wiring at the FasTrak Express. Flessner also testified that he was hired to rewire the store "100 percent." The FEI invoice also charged nearly twice the amount for labor than the amount charged for parts: FEI invoiced the Alis for over $95,000.00 in labor and only a little over $50,000.00 in parts. Although FEI billed the Alis for parts necessary to complete the electric work and rewiring, the essence of the contract was one for services and not goods. *See id.* Because the oral contract between the parties was one for

11

services and not goods, the statute of frauds does not apply. *See id.* We overrule the Alis' second issue on appeal.

## V. ATTORNEYS' FEES

By their fourth issue, the Alis contend that there is no evidence to support the trial court's award of attorneys' fees to FEI. Specifically, the Alis argue that FEI's attorney did not present any testimony or other evidence in support of FEI's claimed attorneys' fees.

### A. Standard of Review and Applicable Law

Because the Alis are challenging the legal sufficiency of the evidence to support a finding on which they did not have the burden of proof at trial, they must demonstrate that no evidence supports the finding. *See Brockie v. Webb,* 331 S.W.3d 135, 138 (Tex. App.—Dallas 2010, no pet.) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)). If more than a scintilla of evidence exists supporting the trial court's award of attorneys' fees, the Alis' legal sufficiency challenge fails. *See id.*

A determination of reasonable attorneys' fees is a question for the trier of fact. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 12 (Tex. 1991). Factors that a fact-finder should consider when determining the reasonableness of a fee include:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)   the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)   the fee customarily charged in the locality for similar legal services;

(4)   the amount involved and the results obtained;

(5)   the time limitations imposed by the client or by the circumstances;

12

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent on the results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

Evidence of each of the *Andersen* factors is not required to support an award of attorneys' fees. *See Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.) (op. on reh'g); *see also Sw. Grain Co. v. Pilgrim's Pride S.A. de C.V.,* No. 13-07-00557-CV, 2010 WL 2638483, *8 (Tex. App.—Corpus Christi June 28, 2010, pet. denied) (mem. op.) (recognizing that it is sufficient for an attorneys' fees expert to testify that he "reviewed an attorney's file and that he offer[ed] an opinion that the fees charged for that work were reasonable and necessary"). In reviewing an award of attorneys' fees, we look at the entire record, the evidence presented, the amount in controversy, the common knowledge of the participants, and the relative success of the parties. *See Garrod Invs., Inc. v. Schlengel,* 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi 2004, no pet.).

## B.     Discussion

Considering the *Andersen* factors, we note that there was some evidence in the record in support of the attorneys' fees award. *See Andersen,* 945 S.W.2d at 818; *Dieterich,* 270 S.W.3d at 706. This case was on file in district court for over two years. During that time FEI's counsel responded to the Alis' traditional motion for summary judgment on their affirmative defenses. Additionally, this case was tried before the court,

13

and FEI's counsel secured a judgment in excess of six figures on behalf of his client. *See Andersen,* 945 S.W.2d at 818 (recognizing the length of the time the case was pending, the amount in controversy, the results obtained, and the difficulty of the legal questions involved as factors in determining the reasonableness of an award of attorneys' fees). During trial, FEI called its attorney to the stand to testify regarding attorneys' fees. FEI's counsel testified as follows: "It's my testimony that a reasonable and necessary attorney's fee for the type of case and the amount of work involved in this cause would be $4,500.00." The trial court awarded FEI the requested $4,500.00.

We therefore determine that there was some evidence in the record to support the trial court's award of the attorneys' fees. *See Andersen,* 945 S.W.2d at 818. We overrule the Alis' fourth issue on appeal.

## VI. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 1st
day of October, 2015.

14