733 P.2d 652

**PIONEER ROOFING COMPANY, an Arizona corporation, Plaintiff-Appellee,**

v.

**MARDIAN CONSTRUCTION COMPANY, an Arizona corporation, Defendant-Appellant/Third-Party Plaintiff-Appellee/Third-Party Plaintiff-Cross Appellee,**

v.

**WESTERN WOOD STRUCTURES, INC., an Oregon corporation, Third-Party Defendant-Appellee/Third-Party Defendant-Cross Appellant,**

**Rossman & Partners, an Arizona general partnership, Third-Party Defendant-Appellee,**

**Board of Regents, Third-Party Defendant-Appellant.**

**Nos. 1 CA–CIV 7872, 1 CA–CIV 7950.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 25, 1986.

Jennings, Kepner & Haug by William F. Haug and Robert O. Dyer, Phoenix, for Pioneer Roofing Company.

Snell & Wilmer by Daniel J. McAuliffe, Lonnie J. Williams, Jr. and George J. Coleman, III, Phoenix, for Mardian Construction Company.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Roger T. Hargrove, Phoenix, for Western Wood Structures, Inc.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal and Fred Cole, Phoenix, for Rossman & Partners.

Glenn A. Brockman, Phoenix, for Arizona Board of Regents.

## OPINION

CORCORAN, Judge.

### I. FACTS

In 1975, the Arizona Board of Regents (the Board) entered into a contract with Mardian Construction Company (Mardian) for the construction of a multipurpose facility called the "Ensphere" to be located on the Northern Arizona University campus in Flagstaff, Arizona. The facility, a sports, cultural, and recreational stadium, features a glue-laminated dome constructed primarily of wood. The contract between the Board and Mardian is composed of standard agreement forms issued by The American Institute of Architects and numerous addenda. These forms and addenda will be collectively referred to as "general contract documents" throughout this opinion. Mardian, as a result of these general contract documents, entered into various subcontract agreements. Two of the subcontractors were Western Wood Structures, Inc. (Western Wood) and Pioneer Roofing Company (Pioneer).

Western Wood agreed to provide the structural design and complete installation of the dome's glue-laminated structural system and its wood decking. Pioneer's subcontract with Mardian stated that it would provide all of the labor and materials necessary to construct the entire roofing application for the dome. Pursuant to ex-

press provisions of the subcontract agreement, Pioneer was to install the roofing application in strict accordance with the directions of the Flintkote Company (Flintkote), the manufacturer of the monoform roofing material used on the dome.

Rossman & Partners (Rossman), another party to this appeal, was the architectural firm retained by the Board to provide the working drawings and specifications for the facility and general administration of the construction contract. The parameters of Rossman's duties as project architect were set forth in Article 2 of the Board's contract with Mardian, and in a separate contract entered into by the Board and Rossman.

During the construction of the facility, problems arose and Pioneer incurred work and expenses which were not contemplated in the original subcontract agreement.

Only two items of extra work, reroofing the dome's cupola and perimeter, which will be discussed in detail later in this opinion, are relevant to the resolution of particular issues raised in this appeal.

Most of Pioneer's claims for extra work were submitted to Mardian by letter dated June 30, 1979 and denominated as Pioneer's final billing. Mardian claims that it did not receive this letter until November 1979. Mardian submitted Pioneer's claims to Rossman in November 1979 for the issuance of a change order increasing the contract price to an amount sufficient to cover the claims. Rossman declined to issue the change order. Pursuant to the procedures outlined in A.R.S. § 12–821, Mardian then presented Pioneer's claims for extra compensation to the Board, which disallowed the claims.

Meanwhile, Pioneer had filed a complaint against Mardian alleging negligence and breach of contract. Pioneer claimed that it had performed extra work (emergency and corrective repair work) at Mardian's direction for which it was entitled to additional compensation.

Mardian filed its answer and a third-party complaint naming Western Wood and Rossman as third-party defendants. Mardian later filed an amended third-party complaint that named the Board as an additional third-party defendant. Mardian's amended third-party complaint alleged that Rossman and the Board were negligent, that the Board was obligated by contract to increase the contract price, and that Western Wood was negligent, breached its contract, and was liable to Mardian for indemnification.

Thus were the five parties drawn into the vortex of extensive discovery and a month-long jury trial, involving claims of $109,-805.96, or approximately 1.4% of the $7,800,000 contract price. It is readily apparent that with the five parties protecting their interests, the expenditures of attorneys' fees would quickly escalate and render the case impossible to settle. Although various arbitration clauses are in the contract documents, the parties eschewed arbitration to resolve this case.

The trial court granted directed verdicts for Mardian as to the negligence claims in Pioneer's complaint and for Rossman, the Board and Western Wood as to Mardian's claims of negligence. Rossman was dismissed from the lawsuit. The jury verdicts are as follows: (1) $63,015.69 for Pioneer and against Mardian; (2) $51,261.37 for Mardian and against the Board; and (3) $3,292.00 for Mardian and against Western Wood. The net result is that less than $64,000 is changing hands.[1]

The trial court, expressly to aid appellate review, wrote a lengthy, detailed minute entry on March 30, 1984 awarding costs and attorneys' fees, and set forth its method for determining and allocating these awards. The court, accepting as reasonable the amounts submitted for attorneys' fees, applied a "percentage of success" formula for awarding fees and costs in accord with A.R.S. §§ 12–341 and –341.01, which permit the court to award fees and costs to "the successful party" or parties. The awards coincide with the percent of claimed damages awarded by the jury. For example, Pioneer requested approximately $86,-500.00 from Mardian; the jury verdict was for $63,015.69, a 73% recovery against Mar-

---

1. To demonstrate the complex and picayune issues resolved by the jury, we set forth the verdicts in detail:

1. for Pioneer and against Mardian regarding the reroofing of the cupola in December 1976: $3,332.50;

2. for Mardian and against the Board on Mardian's third-party complaint as to the reroofing described in 1: $3,332.50;

3. for Pioneer and against Mardian regarding the reroofing and reapplication of monoform to portions of the roof below the G-ring which occurred between June and September of 1977: $47,527.36;

4. for Western Wood and against Mardian on Mardian's third-party complaint as to the reroofing and reapplication described in 3;

5. for Mardian and against the Board on Mardian's third-party complaint as to the reroofing and reapplication described in 3: $47,-527.36;

6. for Pioneer and against Mardian regarding the reroofing of the perimeter in August of 1977: $3,292.00;

7. for Mardian and against Western Wood on Mardian's third-party complaint as to the reroofing described in 6: $3,292.00;

8. for Pioneer and against Mardian regarding the reroofing of the lightning protection system in August of 1977: $7,121.89;

9. for the Board and against Mardian on Mardian's third-party complaint as to the reroofing described in 8;

10. for Pioneer and against Mardian regarding the performance of repairs in October of 1977: $792.18;

11. for the Board and against Mardian on Mardian's third-party complaint as to the repairs described in 10;

12. for Pioneer and against Mardian regarding performance of glulam flashing repairs in December of 1977: $279.60;

13. for Western Wood and against Mardian on Mardian's third-party complaint as to the glulam described in 12;

14. for the Board and against Mardian on Mardian's third-party complaint as to the glulam described in 12;

15. for Pioneer and against Mardian regarding the performance of an inspection and repairs in March of 1978: $401.51;

16. for Mardian and against the Board on Mardian's third-party complaint as to the inspection/repairs described in 15: $401.51;

17. for Pioneer and against Mardian regarding the performance of repairs in August of 1978: $268.65;

18. for the Board and against Mardian on Mardian's third-party complaint as to the repairs described in 17.

dian. Pioneer's percentage of success against Mardian was 73%, so Pioneer was awarded 73% of its attorneys' fees and costs. Since Pioneer requested attorneys' fees from Mardian in the amount of $100,624.50 and costs of $4,004.85, the court awarded Pioneer 73% of each sum respectively, or $78,455.88 and $2,923.54.

Mardian was allowed to pass some of the awards against it through to the Board and to Western Wood. For example, as to the Board, Mardian requested that the same relief obtained by Pioneer against Mardian be granted to Mardian against the Board. Since the trial court determined that Mardian was 85.8% successful against the Board, it awarded Mardian 85.8% of $146,674.63 (the total of $73,455.88 which Mardian had to pay Pioneer and $73,218.75 incurred by Mardian to its own attorneys), or $125,846.83. The same allocation was made regarding costs.

The results of the court's method of allocation are summarized as follows:

I. Attorneys' Fees

| TO | | FEES REQUESTED | SUCCESS % | FEES AWARDED | FROM |
|---|---|---|---|---|---|
| 1. Pioneer | $ | 100,624.50 | 73 | $ 73,455.88* | Mardian |
| 2. Western Wood | | 51,330.00 | 93.6 | 48,044.88 | Mardian |
| 3. Rossman | | 18,970.00 | 100 | 18,970.00 | Mardian |
| 4. Mardian | a) | 73,218.75 | (requested by Mardian against Western Wood and the Board) | | |
| | | +73,455.88* | (fees awarded to Pioneer against Mardian) | | |
| | $ | 146,674.63 | 6.4 | 9,387.18 | Western Wood |
| | b) | 146,674.63 | 85.8 | 125,846.83 | The Board |

II. Costs

| TO | | COSTS REQUESTED | SUCCESS % | COSTS AWARDED | FROM |
|---|---|---|---|---|---|
| 1. Pioneer | $ | 4,004.85 | 73 | $ 2,923.54** | Mardian |
| 2. Western Wood | | 2,876.15 | 93.6 | 2,692.08 | Mardian |
| 3. Rossman | | 2,644.20 | 100 | 2,644.20 | Mardian |
| 4. Mardian | a) | 4,476.75 | (requested by Mardian against Western Wood and the Board) | | |
| | | + 2,923.54** | (costs awarded to Pioneer against Mardian) | | |
| | $ | 7,400.29 | 6.4 | 473.62 | Western Wood |
| | b) | 7,400.29 | 85.8 | 6,349.45 | The Board |

---

\* The same $73,455.88 in attorneys' fees awarded to Pioneer against Mardian is "passed through" and awarded to Mardian against the Board.

\*\* The same $2,923.54 in costs awarded to Pioneer agaisnt Mardian is "passed through" and awarded to Mardian against the Board.

---

The Board's appeal (1 CA–CIV 7872) is taken from the judgment, jury awards and the awards of attorneys' fees and costs against the Board and in favor of Mardian. Mardian appeals (1 CA–CIV 7950) from the portions of the judgment in favor of Pioneer, Western Wood and Rossman. Western Wood has filed a cross-appeal to Mardian's appeal and contests the jury award and the awards of attorneys' fees and costs for Mardian and against Western Wood. Mardian, the Board, and Western Wood also appeal from the court's denial of their motions for new trial and for judgment notwithstanding the verdicts.

This court consolidated the appeals.

Thus, the five parties embarked on this appeal involving less than $64,000, or approximately eight-tenths of 1% of the $7,800,000 contract price. At that juncture, the attorneys' fees awarded to the "*successful*" parties in the trial court amounted to $202,248.89, a sum more than threefold the amount of the relief granted. The briefs in this court weigh over six pounds.

## II. STANDARDS OF REVIEW

The appeals and cross-appeal in this case are taken from a variety of motions, as well as a judgment based on jury verdicts.

On an appeal reviewing the judgment and order denying a motion for new trial, this court will consider all conflicting evidence in the light most favorable to the appellee and will take as true all competent evidence supporting the judgment. *Home Indem. Co. v. Bush*, 20 Ariz.App. 355, 513 P.2d 145 (1973).

Upon review of a motion for directed verdict or judgment notwithstanding the verdict, the appellate court must take that view of the evidence most favorable to the verdict and from that evidence and the inferences reasonably and justifiably to be drawn therefrom, determine whether, under the law, the verdict can be sustained. *Tucson Title Ins. Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963).

On appeal from a judgment entered on a jury verdict, this court must view the evidence in a light most favorable to the prevailing party and must give that party all the reasonable inferences arising from that favorable view of the evidence. *Hallmark v. Allied Prod. Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982). Where the sufficiency of the evidence to sustain a judgment is questioned, if there is any substantial evidence from which reasonable persons could have found ultimate facts to be such as will sustain the verdict, the judgment will be affirmed. *Sanders. v. Beckwith*, 79 Ariz. 67, 283 P.2d 235 (1955).

■ In determining whether a jury instruction is justified, we must view the evidence in the strongest manner supporting the theory of the party requesting the instruction. If there is any evidence tending to establish such a theory, the instruction should be given even if contradictory facts are also presented. It is for the jury to find the facts and apply the instructions to the facts as they find them. *Hallmark.*

■ The trial court's duty is to define in understandable language the applicable legal principles. It need not instruct on every refinement suggested by counsel. *Id.* Instructions must be viewed as a whole and not piecemeal, the test being, upon the whole charge, whether the jury will gather the proper rules to be applied in arriving at the correct decision. *Id.*

## III. THE BOARD'S APPEAL: 1 CA-CIV 7872

### A. *The Statute of Limitations in A.R.S. § 12-822(A)*

The Board's first argument in 1 CA-CIV 7872 is that the lawsuit brought by Mardian against the Board should have been barred by the two-year statute of limitations contained in A.R.S. § 12-822(A).

In its own appeal (1 CA-CIV 7950), Mardian argues that if we find that its third-party complaint was filed after the statute had expired, then we must also find that this was a result of Pioneer's failure to comply with its subcontract agreement (i.e., its delay in presenting its various claims for extra work). Therefore, Mardian believes that in 1 CA-CIV 7950 it is entitled to the same relief against Pioneer as the Board receives against Mardian in 1 CA-CIV 7872. Pioneer's compelling and dispositive argument relating to this limitations issue is that the statute did not begin to run until Pioneer "completed" its subcontract with Mardian in August 1979, the time at which Flintkote was first willing to accept the roof for bonding, and Pioneer was therefore first entitled to close its subcontract and receive final payment.

The Board is a state agency; therefore, any lawsuit brought against it based on a claim on contract or for negligence, which

has been disallowed, is governed by A.R.S. §§ 12–821, *et seq. Arizona Bd. of Regents v. Arizona York Refrig. Co.*, 115 Ariz. 338, 340, 565 P.2d 518, 520 (1977). At the time the case before us commenced, A.R.S. § 12–822(A) provided:

The action authorized under § 12–821 shall not be maintained unless commenced within two years after the cause of action accrues.

(*See* Laws 1984, ch. 285, §§ 5 & 6.) Our first task is to determine when Mardian's cause of action accrued.

■ The accrual of a cause of action means the right to institute and maintain a suit. *Estate of Musgrove*, 144 Ariz. 168, 696 P.2d 720 (App.1985); *Godde v. Wood*, 509 S.W.2d 435, 441 (Tex.Civ.App.1974).

Mardian's lawsuit against the Board stated that the Board was obligated by contract to increase the total contract price to cover costs incurred by Pioneer for the extra work it completed: (1) to prevent weather damage to the dome; (2) to eliminate wrinkles below the G-ring; (3) to install a lightning rod system; and (4) to repair roof leaks.

The Board characterizes Mardian's cause of action as one to recover for extra work performed and argues that it accrued at the time the extra work was completed. The Board points out that the most recent item of extra work for which the jury returned a verdict in favor of Mardian and against the Board occurred in March 1978. The most recent item for which Mardian sought compensation from the Board occurred in August 1978. The Board argues that since Mardian's amended third-party complaint (which added the Board as a party) was not filed until February 1981, any action that Mardian could bring against the Board was lost as a result of the two-year statute of limitations in A.R.S. § 12–822(A).

■ In situations involving a construction or building contract, if a claim for work, labor or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been com-

pleted), then the claim will be treated and considered as an *entire* demand and the applicable statute of limitations will not commence to run *until the contract has been finished. Godde*, 509 S.W.2d at 441. *See also Sobel v. Jones*, 96 Ariz. 297, 394 P.2d 415 (1964). Pioneer's subcontract with Mardian specified its work project as Membrane Roofing, including the entire roof application under the manufacturer's supervision.

■ The language contained in Mardian's subcontract with Pioneer evidences an indivisible contract for the installation of an entire roofing application. *Allen-Howe Specialties Corp. v. U.S. Constr., Inc.*, 611 P.2d 705 (Utah 1980) (subcontract with one monetary consideration for the whole work was indivisible despite partial payments to subcontractor as the work progressed); *cf. Shapiro Eng'g Corp. v. Francis O. Day Co.*, 215 Md. 373, 137 A.2d 695 (1958); *see also M.F.A. Mut. Ins. Co. v. Gulf Ins. Co.*, 445 S.W.2d 829 (Mo.1969); Annot., 22 A.L. R.2d 1343 (1952). The manufacturer in this case was the Flintkote Company, and, under the specifications, the owner (the Board) could purchase a warranty bond from Flintkote prior to the start of Pioneer's roof installation. The Board exercised its option to purchase the warranty bond, and therefore, Pioneer maintains that it did not complete its subcontract until August 1979, at which time Flintkote was first willing to accept the roof for bonding. We agree and hold that A.R.S. § 12–822(A) did not begin to run until Pioneer completed its *entire* subcontract with Mardian. Although the Flintkote warranty bond did not issue until January 4, 1980, we believe completion occurred in August 1979 when Flintkote first determined that the roof was acceptable for bonding. Therefore, the filing of Mardian's amended third-party complaint in February 1981 fell within the two-year limitations period set forth in A.R.S. § 12–822(A).

B. *A Contractual Condition Precedent to the Claim for Reroofing the Cupola*

■ The Board's second argument is that Mardian, by failing to fulfill a contrac-

tual condition precedent to the recovery of damages for the "reroofing the cupola" claim, is not entitled to a money judgment regarding that claim.

Subparagraph 12.2.1 of Article 12 ("Changes In The Work") in the "General Conditions" section of the Board's contract with Mardian provides:

If the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property in which case the Contractor shall proceed in accordance with Subparagraph 10.3.1. No such claim shall be valid unless so made. If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined by.the Architect. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order.

The Board notes that the contract documents further provided that a claim for extra work would be recognized only if the work had been authorized in advance by a written directive from the architect. The Board alleges that Mardian failed to provide any written notice of its claim for the reroofing of the cupola within the time set forth in paragraph 12.2.1, and that the work was not performed at the written directive of the architect.

Mardian's position is that if it failed in any way to submit Pioneer's claim to the Board in accordance with the terms of the contract, it was solely due to Pioneer's failure to make such information available to Mardian in a timely fashion. Mardian relies on paragraphs 4.18 and 4.19 of its subcontract with Pioneer which provide:

4.18 Subcontractor agrees to submit all claims for additional costs, extensions of time, damages for delays or otherwise, in sufficient time so that Contractor may comply with the provisions of the Contract Documents for like claims of Contractor upon the Owner.

4.19 That the determination of any disputed question made pursuant to the provisions of the General Contract, and the provisions of the General Contract with respect to termination shall, like all other relevant provisions of the General Contract, be applicable to this Subcontract and shall be binding upon the Subcontractor.

Mardian characterizes itself as a "contractual conduit" for the transmittal of Pioneer's claims to the Board, and argues that if Mardian's claim is deemed untimely under the contract, then Pioneer is ultimately at fault for having failed to meet its contractual obligations with respect to the presentation of the claim. Therefore, Mardian argues that if the Board prevails on this issue in 1 CA–CIV 7872, then Mardian must prevail in its appeal against Pioneer.

Pioneer's compelling counter-argument is that its reroofing of the cupola in December 1976 was in response to an emergency that endangered property, and therefore the notice provisions of subparagraph 12.-2.1 did not apply. We agree. The testimony presented at trial confirms this conclusion.

Joseph C. Bueche, President of Pioneer, testified that in approximately early December 1976, he was notified by Jim Pyle, his job superintendent at the facility, that the extremely cold weather was preventing the Fibrex cement from setting up, and as a result, the roofing felts were not adhering together. Bueche went up to Flagstaff on December 8, 1976, and observed that the felts on the top of the cupola were not adhering properly. Bueche contacted Flintkote, advised them of the situation, and asked them to send someone up to Flagstaff for advisory purposes. Flintkote sent Don Hughes. During this time, Bueche also spoke with John Grider, Mardian's field superintendent, about the problem.

On December 15, a meeting was held in Flagstaff to discuss the problem. The meeting was attended by Bueche, Pyle, Hughes, Grider, John DeChandt and Jack

Miles, both Flintkote employees, and Dennis Brabandt from Rossman. Bueche testified that those present at this meeting agreed that the cold process system could not be successfully applied in the "potentially severe" winter, and that it was imperative that the top of the dome be waterproofed immediately to prevent destruction of the wood and insulation. The suggestion was made that hot asphalt could be applied over the felts that had been previously applied. Bueche further testified that three additional felts were applied with hot asphalt on the part of the roof that surrounded the cupola, as well as on the cupola itself. He noted that this process was sufficient for the emergency situation, but would not have been acceptable for a permanent completed roof. Both Bueche's and Grider's testimony support the view that the situation was urgent and that Pioneer obtained verbal approval from Rossman to use the hot asphalt process on the cupola. If Pioneer's action was in response to an emergency, subparagraph 10.-3.1, not 12.2.1, was controlling. Subparagraph 10.3.1 provides:

> In any emergency affecting the safety of persons or property, the Contractor shall act, at his discretion, to prevent threatened damage, injury or loss. Any additional compensation or extension of time claimed by the Contractor on account of emergency work shall be determined as provided in Article 12 for Changes in the Work.

Rossman's "go-ahead actions" at the time of the December 15 meeting constituted a waiver of the provision in the supplementary conditions to the general contract documents that provided: "Claims for additional compensation, on account of extra work done, will not be recognized unless such extra work has been authorized in advance and in writing by the Architect." *See Sitkin v. Smith*, 35 Ariz. 226, 276 P. 521 (1929); Annot., 66 A.L.R. 649 (1930). Therefore, Pioneer and Mardian acted in accord with the general contract documents, and the jury verdicts awarding judgments to both Pioneer and Mardian as to the reroofing claim will be upheld.

## C. *The Pass Through of Attorneys' Fees and Costs at Trial*

■ The trial court, in its minute entry of March 30, 1984 (discussed above), "passed through" to the Board as part of Mardian's award of attorneys' fees and costs a portion of the fees and costs assessed against Mardian in favor of Pioneer. The Board complains that the trial court exceeded its authority by making this award and that the amount of the award was unreasonable. Mardian's award of fees and costs was made by the trial court pursuant to the following statutes:

§ 12–341. Recovery of costs

The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law.

§ 12–341.01 Recovery of attorney's fees

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

B. The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney's fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.

The Board argues that former A.R.S. § 12–825 (renumbered as A.R.S. § 12–823 and amended by Laws 1984, ch. 285, § 8) prohibits an award of attorneys' fees and costs against the Board. Former A.R.S. § 12–825 provided:

> If judgment is rendered for plaintiff, it shall be for the amount actually due from the state to plaintiff, with legal interest thereon from the time the obligation accrued and without costs.

The Board also cited *New Pueblo Constr., Inc. v. State*, 144 Ariz. 113, 696 P.2d 203 (App.1984), which has since been vacated by our supreme court, 144 Ariz. 95, 696 P.2d 185 (1985), and *State v. Juengel*, 15 Ariz.App. 495, 489 P.2d 869 (1971), in support of its position that attorneys' fees and costs are not recoverable against the state in cases involving liquidated damages. The Board also argues that even if we hold that the claims in this case were unliquidated, Mardian is still not entitled to an award of fees and costs because A.R.S. § 12–825 would still be applicable.

The supreme court in *New Pueblo* held that A.R.S. § 12–825 does not bar an award of attorneys' fees and/or taxable costs against the state. 144 Ariz. at 107–09, 696 P.2d at 197–99. *New Pueblo* also concluded that the term "costs" in A.R.S. § 12–825 did not include either "attorney's fees" or "taxable costs." *Id.* at 107–08, 696 P.2d at 197–98. *See Boltz & Odegaard v. Hohn*, 148 Ariz. 361, 714 P.2d 854 (App.1985). The supreme court in *New Pueblo* rejected the "liquidated/unliquidated" distinction drawn by this court in *State v. Juengel*.

Clearly, the Board's argument regarding A.R.S. § 12–825 is without merit.

The Board also raises a number of issues based on its reading of A.R.S. §§ 12–341 and –341.01 which it believes supports its position that the trial court exceeded its authority in making the award of fees and costs to Mardian. All of these issues are properly subsumed into a single, novel issue of Arizona law: whether the trial court's "pass through" of fees and costs is appropriate under § 12–341.01. We now address this issue.

The trial court made its awards of fees and costs "in order to mitigate the burden of the expense of litigating this case." The court believed that "in light of the nature of the claims and the alignment of the parties ... it would be inequitable not to allocate costs and attorneys' fees." The court considered it reasonable to allow Mardian to "pass through" some of the fees and costs awarded to Pioneer since Mardian had achieved "success in passing through certain of [Pioneer's] claims to Third-Party Defendants." The court found this method of allocation to be "fair."

The award of attorneys' fees under A.R.S. § 12–341.01 is discretionary with the trial court, and if there is any reasonable basis for the exercise of such discretion, its judgment will not be disturbed. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570–71, 694 P.2d 1181, 1184–85 (1985). *See* Note, *Statutory Attorney's Fees in Arizona: An Analysis of A.R.S. Section 12–341.01*, 24 Ariz.L.Rev. 659, 679 (1982) ("The Arizona appellate courts have given great deference to a trial court award made pursuant to subsection A [of A.R.S. § 12–341.-01]"). Our supreme court in *Warner* further clarified this standard of review:

> In reviewing the exercise of that discretion it is well for an appellate court to remember:
>
> > [T]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge.
> >
> > .... We find this general principle especially applicable to review of a trial judge's discretion under the statutory scheme of A.R.S. § 12–341.01.

*Id.* at 571, 694 P.2d at 1185 (citation omitted).

In order for a party to recover attorneys' fees under A.R.S. § 12–341.01, it is necessary that the parties be adverse. *Nationwide Resources Corp. v. Ngai*, 129 Ariz. 226, 232, 630 P.2d 49, 55 (App.1981). Adversity, however, is not determined solely from the parties' alignment in the pleadings, but rather must be ascertained from the opposing positions or interests of the parties. *Id.* The rule involving third-party practice clearly recognizes that third-party defendants are in an adverse position to the party asserting a claim for which they may be ultimately responsible. *Id.* By virtue of the jury's verdicts and the judgment in the instant case, the Board was ultimately

responsible for many of the claims asserted by Pioneer against Mardian. Therefore, we hold that the Board was: (1) "adverse" to Pioneer for purposes of A.R.S. § 12–341.01, and (2) Pioneer's "adversary" for purposes of A.R.S. § 12–341.

The term "successful party" appears in both A.R.S. §§ 12–341.01 and 12–341. The trial court has discretion to determine who is the "successful party" in multiple-party litigation. *See Nataros v. Fine Arts Gallery*, 126 Ariz. 44, 49, 612 P.2d 500, 505 (App.1980). In the instant case, the trial court used a "percentage of success factor" to calculate the successfulness of each party in regard to the various claims. Given the third-party posture of this litigation and its multiple parties and claims, we hold that the trial court's method of determining who was the "successful party" as to each claim was not an abuse of discretion. *See id. See also Watson Constr. Co. v. Amfac Mortgage Corp.*, 124 Ariz. 570, 584–85, 606 P.2d 421, 435–36 (App.1979).

The Board raises a number of challenges to the *amount* of attorneys' fees and costs awarded to Mardian via the trial court's "pass through" method. It is true that § 12–341.01(B) sets a ceiling in that the "award may not exceed the amount paid or agreed to be paid." *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 544, 647 P.2d 1127, 1142, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). The trial court did not exceed this ceiling; it merely awarded the same costs and attorneys' fees on a "pass through" basis—that is, once to Pioneer from Mardian and then, to a certain extent, to Mardian from either Western Wood or the Board. The total amount of fees awarded to Pioneer ($73,455.88) was ultimately composed of: (1) $4,701.18 from Western Wood (6.4%); (2) $63,025.14 from the Board (85.8%); and (3) $5,729.56 (7.8%) from Mardian. Pioneer's success against Mardian

*on its claims* was substantially passed through to Western Wood and the Board by virtue of the jury's verdicts. The trial court merely wished to mirror this "pass through" effect with regard to its award of fees and costs.

The fees award was made to mitigate the burden of the expense of litigation by indemnifying Mardian against the expense of successfully asserting its rights in court. As to the claims by Pioneer that were "passed through" Mardian to the Board, Mardian was both "establish[ing] a just ... defense" to Pioneer or "establish[ing] a just claim" against the Board within the meaning of § 12–341.01(B). Mardian interfaces between Pioneer and the Board.

As previously noted, both Pioneer and Western Wood were named as subcontractors in the general contract documents between the Board and Mardian. Given the third-party posture of this litigation and the relative success of the parties, the trial court did not abuse its discretion by determining that the total amount of fees "incurred" by Mardian in this litigation was the sum of (1) the fees awarded against Mardian and in favor of Pioneer, and (2) the fees requested by Mardian.[2]

The Board also argues that the trial court's award of attorneys' fees was arbitrary and capricious since Mardian's application for an award of fees failed to distinguish between the time spent solely in defending against Pioneer's suit and the time spent in prosecuting Mardian's action against the Board. This court has stated:

> [A] plaintiff (or appellant) may present in one case distinctly different claims for relief that are based on different facts and legal theories. Where claims could have been litigated separately, fees should not be awarded for those unsuccessful separate and distinct claims which are unrelated to the claim upon which the plaintiff prevailed.

---

**2.** The issue is not presented to us as to whether the attorneys' fees and costs Mardian paid to Pioneer can be recovered from the Board as consequential damages of the Board's breach of

contract with Mardian. *See Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 257–58, 603 P.2d 513, 528–29 (App.1979).

*Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983). Pioneer's successful claims against Mardian and Mardian's successful third-party claims against the Board arose out of the same set of operative facts. The very nature of third-party practice belies any argument that these claims are distinctly separate and unrelated. We therefore hold that the trial court's award of fees, based on Mardian's application, was neither arbitrary nor capricious.

■■■ The Board maintains that any fees incurred by Mardian before its filing of the third-party complaint against the Board are inappropriate for inclusion in Mardian's application for an award of fees from the Board. Mardian filed its amended third-party complaint naming the Board less than eleven months after Mardian first appeared. The Board does not claim that Mardian has recovered attorneys' fees incurred before the filing of the complaint by Pioneer. In *First Nat'l Bank v. Continental Bank,* 138 Ariz. 194, 673 P.2d 938 (App. 1983), we held that "... precomplaint investigation and evaluation of the potential claim is part of the process and expense of litigation." *Id.* at 200, 673 P.2d at 944. Mardian did not spend an unreasonable length of time investigating the case before involving the Board in this case. We find no error in the award of attorneys' fees to Mardian against the Board for fees incurred before the Board became a party.

### IV. MARDIAN'S APPEAL: 1 CA–CIV 7950

A. *The Waiver and Estoppel Instructions*

In its opening brief, Mardian argues that the trial court erred in instructing the jury on the doctrines of waiver and estoppel. Mardian contends that the evidence presented by Pioneer at trial was insufficient to justify the given instructions.

The trial court gave the following instructions to the jury:

In order to recover from Mardian, Pioneer has the burden of proving:

1. that the work for which Pioneer claims additional compensation was outside the scope of its sub-contract with Mardian;

2. that Mardian directed Pioneer to perform such work;

3. that Pioneer complied with the terms of its sub-contract with Mardian, or that Mardian waived or is estopped from asserting those terms; and

4. the fair and reasonable value of the work performed.

Waiver is either the express, voluntary, intentional relinquishment of a known right or requirement or such conduct as warrants an inference of such an intentional relinquishment. Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right.

The waiver of one right or requirement under a contract does not necessarily waive other rights under the contract.

A party asserting that a right or requirement has been waived has the burden of proof on that issue.

Estoppel is a doctrine that precludes a party from asserting a position or claim that is inconsistent with one in which he had previously acquiesced.

Estoppel means that a party is prevented by his own acts or the authorized acts of his agent, from claiming a right to the detriment of another party who was reasonably entitled to rely on such conduct and has acted accordingly.

The party seeking to invoke the doctrine of estoppel has the burden of proof on that issue.

■■■ In assessing the necessity of jury instructions, this court must view the evidence in the light most favorable to the instructions' proponent. If evidence tends to establish the underlying theory of the instruction, the instruction must be given and any conflict between that and other evidence must be resolved by the jury. *Starr v. Campos,* 134 Ariz. 254, 255, 655 P.2d 794, 795 (App.1982); *Hallmark v. Allied Prod. Corp.,* 132 Ariz. 434, 443, 646 P.2d 319, 328 (App.1982).

■ The jury's consideration of the doctrines of waiver and estoppel was necessary only if Mardian proved that Pioneer had failed to comply with provisions of its subcontract. Two subcontract provisions that discuss claims for extra work by a subcontractor are subparagraphs 4.17 and 4.18. The latter subparagraph is reprinted *supra;* the former provides that the subcontractor shall submit written copies of cost or credit proposals for revised work to the contractor prior to the commencement of such work. There is an abundance of evidence from which the jury could conclude that Mardian waived the writing requirements set forth in subparagraph 4.17. We have already alluded to the testimony of Bueche and Grider with regard to the reroofing of the cupola. We further conclude that Grider's statements and conduct would support a trial court's decision to give waiver and estoppel instructions. Furthermore, with respect to Pioneer's claim for reroofing the dome's perimeter, Bueche testified that Grider conceded before the reroofing was begun that Pioneer would be entitled to extra compensation for that work. Bueche's testimony regarding the installation of the dome's lightning protection system is additional proof of conduct on the part of Mardian inconsistent with an intent to assert its contractual rights:

Q. There was no emergency in the installation of this system?

A. That's correct.

Q. And nothing prevented you from making a request for a change order?

A. No, I merely told Mr. Grider we were going to have to claim an extra for doing the work.

Q. You never made a written request?

A. He didn't give a deadline, just get a claim in, he said.

In light of our standard of review for this issue, we also conclude it was proper for the trial court to give the waiver and estoppel instructions. At that point, the jury could resolve any conflicts between this and other evidence presented at trial.

■ Mardian also argues that even if waiver and estoppel instructions were justified by the evidence presented by Pioneer, the instructions given by the trial court were defectively broad in that they failed to limit the applicability of the instructions to specific provisions of the contract. Mardian claims that the trial court's failure to give "limited" instructions prejudiced its defense against Pioneer's claims. We find no merit to this argument. The instructions given were correct statements of the law. The jury was told that "waiver of one right ... under a contract does not necessarily waive other rights under the contract." Pioneer had the burden to prove which rights had been waived and/or which set of facts would estop Mardian from asserting certain inconsistent positions or claims of right. These jury instructions given by the trial court were both sufficient and correct.

B. *Subparagraph 4.17 of the Subcontract*

Mardian next argues that subparagraph 4.17 of its subcontract specifically limits the amount Pioneer can receive for extra compensation to the amount received by Mardian from the Board, and therefore bars any recovery by Pioneer against Mardian.

Subparagraph 4.17 provides in part:
Contractor shall not, however, be liable for a greater sum than Contractor obtains from the Owner for such additional work, less reasonable overhead and profit to the Contractor, and also less professional and counsel fees, costs and expenses incurred by the Contractor in the collection of any such sum of money; and the recovery by Subcontractor for such work shall be conditioned upon a prior recovery therefor by Contractor from the Owner.

In light of this provision, the trial court gave the following jury instruction:
If you find that Pioneer is entitled to extra compensation on one or more of its claims against Mardian, and if you do not find in favor of Mardian and against

Western Wood on any such claim and do find in favor of Mardian and against the Board of Regents on any such claim, the amount which Pioneer is entitled to recover is limited by a provision in its subcontract which states that Mardian cannot be liable for an amount greater than Mardian obtains from the Board of Regents for such work. Accordingly, unless you find that Mardian waived provisions of its subcontract with Pioneer, that the Board of Regents did not waive in its contract with Mardian, you may not award Pioneer any sums against Mardian on any such claim, unless you award Mardian an equal amount against the Board of Regents on such claim.

The essence of Mardian's argument is that Pioneer agreed to look exclusively to a particular fund (i.e., payments from the Board to Mardian) for payment, and that the existence of such fund therefore became a condition precedent to liability on the part of the general contractor to the subcontractor. We disagree with Mardian's position.

As a general rule, conditions precedent are not favored and the courts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract. *Watson Constr. Co. v. Reppel Steel & Supply Co.*, 123 Ariz. 138, 140, 598 P.2d 116, 118 (App.1979). In *Watson*, this court reviewed several prior decisions involving provisions similar to subparagraph 4.17, and concluded that "the majority hold, as a matter of law, that no condition precedent limiting recovery to a specific fund is created by provisions of this nature." *Id.* The court examines the contract containing these provisions and searches for "additional language which clearly shows that the payments were to be made 'exclusively' or 'only' from the specified fund and no other." 123 Ariz. at 142, 598 P.2d at 120. *See Kirchoff v. Cummard*, 26 Ariz. 512, 226 P. 1092 (1924); *cf. Campisano v. Phillips*, 26 Ariz.App. 174, 547 P.2d 26 (1976).

We have reviewed the subcontract in the instant case and the evidence presented at trial regarding its creation before and its use during the construction process, and in light of the *Watson* standard, we find no proof of an intent that payment to Pioneer was to be made exclusively or only from funds paid by or on behalf of the Board to Mardian.

## C. *Attorneys' Fees Awarded to Pioneer And Western Wood*

Mardian's remaining argument is that the trial court erred in awarding attorneys' fees against Mardian and in favor of Pioneer and Western Wood. Additionally, Mardian contends that if attorneys' fees were properly awarded against Mardian, the court abused its discretion by using incorrect figures in its apportionment formula with regard to Pioneer's award.

Mardian claims that its subcontract, specifically subparagraphs 4.14 and 4.17, contains specific provisions for the award of attorneys' fees in disputes arising from the performance of extra work, and therefore preempts the applicability of A.R.S. § 12–341.01 (quoted *supra*) to the facts of this case. *See* A.R.S. § 12–341.01(A). Mardian raises this argument against both Pioneer and Western Wood.

Pioneer and Western Wood correctly point out that the provisions upon which Mardian relies are unilateral. They allow only for the recovery of Mardian's attorneys' fees and are silent as to any reciprocal right on the part of Pioneer or Western Wood.

There are no Arizona cases directly addressing the recoverability of attorneys' fees through A.R.S. § 12–341.01 when a contract gives only one party rights to such fees, and is silent as to the other party's rights. *Sweis v. Chatwin*, 120 Ariz. 249, 585 P.2d 269 (App.1978), is distinguishable from the instant case. In *Sweis*, the parties' contract included a *bilateral* provision that stated: "[T]he successful or prevailing party shall be entitled to recover from the other party or parties, all costs of such judicial or arbitration proceedings, includ-

ing reasonable attorney's fees." *Id.* at 251, n. 2, 585 P.2d at 271 n. 2. This court in *Sweis* held that § 12–341.01 was inapplicable since the parties had provided in their contract the conditions under which attorneys' fees could be recovered. *Id.* at 252, 585 P.2d at 272. This court followed the language of § 12–341.01(A) that the attorneys' fees statute "shall in no manner be construed as *altering,* prohibiting or restricting present or future contracts ... that may provide for attorney's fees." *Id.* In the present case, the contract provision is unilateral, in that it provides for Mardian's recovery of attorneys' fees, rather than providing fees to "the successful or prevailing party."

*Heritage Heights Home Owners Ass'n v. Esser,* 115 Ariz. 330, 565 P.2d 207 (App. 1977), is also distinguishable from the case before us. While *Heritage Heights* involved a unilateral attorneys' fees provision, the court did not address the issue of the other party's right to a statutory recovery of attorneys' fees, because that case was appealed to our court in October 1975 —11 months before § 12–341.01 became effective. Laws 1976, ch. 170, § 26.

 The court will not infer a prohibition against the recovery of attorneys' fees to one party under § 12–341.01 simply because a contract contains a unilateral attorneys' fees provision favorable to another party. Where a contract has a unilateral provision permitting one party to recover attorneys' fees under certain circumstances, § 12–341.01(A) requires that the contract provision be applied when the party seeking recovery of fees is the one allowed recovery under the unilateral contract provision. *Sweis.* Where the same contract lacks a provision regarding the other parties' rights, or denial of rights, to an award of attorneys' fees, § 12–341.01 applies.

This reasoning garners support from our supreme court's decision in *Gulf Homes Inc. v. Goubeaux,* 136 Ariz. 33, 664 P.2d 183 (1983). In *Gulf Homes,* the contract between the seller and buyer of a mobile home only provided for the seller's right to

recover attorneys' fees if collection of a buyer's delinquent installment became necessary. The court would not infer the buyer's rights to recover attorneys' fees under the contract, not because the provision was unilateral, but because the provision dealt with collection matters, not a repudiation of the entire contract. Furthermore, the court denied the buyer's request for attorneys' fees under § 12–341.01 because the "original complaint in this action was filed 21 June 1976"—several months before the statute's effective date. 136 Ariz. at 39, 664 P.2d at 189. The statute does not apply to suits commenced before its effective date. *Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979). It appears that the supreme court would have considered the buyer's request for attorneys' fees under § 12–341.01 had the suit been filed several months later, despite the contract's silence as to the buyer's rights regarding recovery of attorneys' fees.

In California, this issue has been explicitly resolved by statute. Cal.Civ.Code § 1717 (West 1985). The statute provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

This statute was enacted to establish mutuality of remedy where a contractual provision makes recovery of attorneys' fees available for only one party, and to prevent oppressive use of one-sided attorneys' fees provisions. *Reynolds Metals Co. v. Alperson,* 25 Cal.3d 124, 599 P.2d 83, 158 Cal. Rptr. 1 (1979).

 Given the facts of the present case, and the unilateral posture of subparagraphs 4.14 and 4.17 drawn by Mardian in its own favor, we hold that the trial judge properly exercised his discretion in award-

ing attorneys' fees to Pioneer and Western Wood pursuant to § 12–341.01.

Mardian next contends that notwithstanding the applicability of A.R.S. § 12–341.01, the trial court abused its discretion in awarding any fees whatsoever to Pioneer. We have already discussed the broad discretion accorded the trial court in making these awards under the section entitled *The Pass Through of Attorneys' Fees and Costs at Trial.* Mardian's argument appears to be that the trial court did not properly consider some of the factors listed in *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181 (1985). This court will not substitute its discretion for that of the trial judge, unless an abuse of discretion has occurred. *Id.* at 571, 694 P.2d at 1185. Having examined the record, and in light of our standard of review, we find no "abuse of discretion" as that term is defined in *City of Phoenix v. Geyler,* 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985). The trial court's minute entry of March 30, 1984 which is discussed *supra* supports this finding.

Mardian also takes issue with the $86,500.00 figure used by the trial court in determining Pioneer's "percentage of success." Mardian alleges that the trial court failed to take into consideration the full import of Pioneer's limited success in this action, and therefore asks this court to remand this matter to the trial court.

Mardian wrongly assumes that *Warner* imposes an absolute duty on the trial court to reduce Pioneer's attorneys' fees in the first instance. Mardian also incorrectly assumes that once the trial court exercises its discretion to award attorneys' fees, it must do so only according to an articulated precise formula, and that where results between parties and counts are mixed, the trial court is mandated to fix a mathematical computation of each success ratio. *Warner* does not so require.

The trial court exercised its "broad discretion" under *Warner* in an exemplary manner. *See Warner,* 143 Ariz. at 570–71, 694 P.2d at 1184–85.

### D. *Attorneys' Fees Awarded to Rossman*

■ Mardian contends that Pioneer, not Mardian, should be required to pay Rossman's attorneys' fees in this case. Mardian notes that the trial court's original award of attorneys' fees resulted in Rossman receiving $9,485.00 from *both* Mardian and Pioneer. In its final award of fees, the trial court awarded Rossman $18,970.00 against Mardian because "they [Rossman] were entirely successful against Mardian's [third-party] claim." Pioneer responds to this argument by stating that Mardian, not Pioneer, sued Rossman and Rossman itself sought no relief from Pioneer.

Rossman argues that it was totally successful in defending the third-party claim brought against it by Mardian. Rossman, like Pioneer, points out that no authority is cited by Mardian to support its argument, and therefore this court need not even consider this portion of Mardian's appeal. *See Paros v. Hoemako Hosp.,* 140 Ariz. 335, 338, 681 P.2d 918, 921 (App.1984). Rossman labels Mardian's argument that it was "forced" to make Rossman a third-party defendant because of Pioneer's "tort allegations" in its complaint as "nonsense," and asks this court to affirm the trial court's award of attorneys' fees in favor of Rossman and against Mardian.

The trial court properly exercised its discretion in this matter. Pioneer did not make any claims against Rossman. The decision to sue Rossman was made solely by Mardian. Furthermore, Mardian has failed to provide us with any authority supporting its argument. *See Paros.*[3]

### V. WESTERN WOOD'S CROSS–APPEAL

The circumstances surrounding Pioneer's claim for its reroofing of the dome's pe-

---

3. Mardian raises other issues which are conditional upon relief being granted to the Board in its appeal. Since we do not grant relief to the Board, we need not consider the conditional issues raised by Mardian.

rimeter in August 1977 constitute the facts giving rise to Western Wood's cross-appeal. The jury verdict as to this claim awarded Mardian indemnity from Western Wood in the amount of $3,292.00. The court then ordered awards of attorneys' fees and costs for Mardian and against Western Wood in proportion to the jury's award. Western Wood argues in its cross-appeal that Mardian was not entitled to indemnity.

One of the addenda to the general contract documents stated that Pioneer would coordinate with Western Wood and the insulation subcontractor during the roofing process and provide a "weathertight, watertight covering" to protect the roof decking and the insulation. Western Wood's subcontract with Mardian stated that "the roofing subcontractor shall dry sheet all installed deck panels on a daily basis...."

During construction, Pioneer did not apply a temporary, single sheet of protective material. Instead, Pioneer installed two sheets of roofing felts with an adhesive (fibrex cement) between them over the entire area below the G-ring. At trial, Grider testified that he understood that Pioneer's method of protecting the decking was intended to be a portion of the final roof, and that he had concurred in the procedure. Mardian, in its answering brief on cross-appeal, states that "[a] temporary dry sheet, as contemplated by Western Wood's subcontract, would not have been sufficient to protect the dome." Mardian, however, does not provide us with any citations to the record in support of its statement. We need not consider this assertion. *See Arizona Laborers v. Hatco, Inc.*, 142 Ariz. 364, 369–70, 690 P.2d 83, 88–89 (App.1984).

Pioneer's method of protecting the wooden decking presented a problem at the perimeter of the dome. At the time Pioneer began to install its protective covering, Western Wood had already installed its decking panels around the perimeter of the dome so that they "ran wild" (i.e., the panels extended beyond what would eventually be the finish line of the perimeter). Grider testified at trial that this method of installation was "a common construction procedure." Western Wood intended to cut back the "wild" ends at the perimeter at a later date.

Pioneer installed the two sheets of roofing material over the wild ends of the decking. When Western Wood returned in November 1976 to complete the perimeter, the workers cut back the roofing felts in order to trim back the wild ends of the decking and attach fascia members to the decking around the perimeter. Grider testified that at times he observed Western Wood cutting back these felts and that he considered this action necessary. As a result of this "cutting back," Pioneer's felts were damaged and it had to reroof around the perimeter. This reroofing ultimately became one of Pioneer's "extra work" claims in its suit against Mardian. Mardian sought indemnity at trial.

Mardian argues in its answering brief on cross-appeal that the testimony was undisputed that the cause of the wild ends at the perimeter was Western Wood's failure to have the final fascia members on site in a timely fashion so that they could be installed around the perimeter. However, Western Wood contends that there was no testimony that the final fascia members should have been installed in conjunction with the initial perimeter decking, or that they were installed in an improper construction sequence.

Robert L. Collier, Western Wood's project superintendent on the Ensphere project, testified that Western Wood controlled the time when the fascias arrived at the job site.

At trial, Mardian sought indemnity from Western Wood under Paragraph 4.14 of the supplemental subcontract conditions to its subcontract agreement which provided:

> The Subcontractor shall indemnify and hold harmless the Contractor and all of his agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Subcontractor's work under the Contract Documents.

In regard to Mardian's claim against Western Wood, the trial court gave the following jury instruction:

> If you find in favor of Pioneer and against Mardian, you must then determine whether Mardian is entitled to recover against Western Wood Structures on its third-party complaint. In its third-party complaint, Mardian claims that if it is held liable to Pioneer on certain of its claims, it is entitled to recover from Western Wood Structures under its subcontract.
>
> . . . .
>
> In its subcontract, Western Wood Structures agreed it would be responsible for damages to the work of others arising out of the performance of its work under the subcontract and also to indemnify Mardian against all claims, damages and losses arising out of or resulting from the performance of its work under the subcontract.
>
> In order to recover from Western Wood, Mardian has the burden of proving:
>
> 1. That the work performed by Pioneer in reroofing the perimeter arose out of or resulted from the work performed by Western Wood Structures....

Western Wood argues that this instruction is erroneous and contrary to Arizona law because it does not address the relevance of fault on the part of the indemnitor and the indemnitee. It argues that it was improper to allow the jury to consider Mardian's indemnity claim as "one of strict liability." We agree.

Western Wood asked the trial court to give a jury instruction which provided in part:

> The doctrine of indemnity rests upon the proposition that when one is compelled to pay money which in justice another ought to pay, the party may recover the sums so paid unless that party is barred by the wrongful nature of his own conduct. In order for Mardian to recover against Western Wood on its in-

demnity claim, Mardian has the burden of proving:

> (1) That Western Wood breached the obligations set forth in its contract with Mardian;
>
> (2) That such breach by Western Wood caused the damages claimed by Pioneer against Mardian; and
>
> (3) That Mardian was free from any fault in relation to the damages claimed by Pioneer.

■ In Arizona, we are committed to the rule that a contract of indemnity will not be construed to cover losses to the indemnitee caused by his own negligence unless the intention is expressed in clear and unequivocal terms. *Allison Steel Mfg. Co. v. Superior Court,* 22 Ariz.App. 76, 80, 523 P.2d 803, 807 (1974). We must now determine the proper scope of indemnity in this case upon remand.

■ In *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 677 P.2d 939 (App.1983), the indemnity provision in a construction contract provided that the subcontractor would indemnify the general contractor "from any claims, liability or losses suffered by anyone wholly or partially through the negligence of [s]ubcontractor." *Id.* at 168, 677 P.2d at 941. This court noted that the clause was a "general" indemnity agreement because it did not specifically address what effect the indemnitee's negligence would have on the indemnitor's obligation to indemnify. *Id.* The same is true of the indemnity clause in Mardian's subcontract agreement. It is well established in Arizona that under a general indemnity agreement an indemnitee is entitled to indemnification for a loss resulting in part from an indemnitee's passive negligence, *but not active negligence.*

Generally, active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. On the other hand, passive negligence is found in mere nonfeasance, such

as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment.

*Id.* at 169, 677 P.2d at 942.

■ In order to find active negligence there must be some *active participation* in the wrong which was the immediate cause of the injury. *Id.* Mardian concurs with Western Wood's reading of the *Estes Co.* decision but maintains that no evidence was presented at trial to justify the conclusion that Mardian actively participated in the events which resulted in Pioneer's damages. We disagree.

Mardian's general contract with the Board provided:

> The Contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.

Evidence of Mardian's active participation is shown by testimony from Pioneer's Bueche that Mardian's Grider was aware that Pioneer was going to begin work in spite of the unfinished condition of the decking planks.

■ Furthermore, Grider's own testimony confirms his presence at the time of Western Wood's decking installation and Pioneer's later roof application. Grider permitted Pioneer to install two felts over the wild ends of the decking, when he knew that these wild ends would have to be trimmed back to the perimeter at a later date. Grider's acquiescence and participation could be considered by the jury in resolving the question of active negligence.

Western Wood further argues that in the absence of an express contractual provision to the contrary, wrongful fault on the part of an indemnitor must be proven before an indemnity provision will be enforced. We are not persuaded by Western Wood's citation to *American and Foreign Ins. Co. v. Allstate Ins. Co.*, 139 Ariz. 223, 677 P.2d 1331 (App.1983), in support of its argu-

ment. That case dealt with a claim for indemnity based on § 76 of the *Restatement of Restitution.* Ours does not. The correct indemnity rule for cases like the one before us can be found in *Estes Co.:*

> Where a subcontractor expressly agrees to indemnify the general contractor, he will be bound by the clear terms of his undertaking.
>
> ....
>
> It is well established in Arizona that under a general indemnity agreement an indemnitee is entitled to indemnification for a loss resulting in part from an indemnitee's passive negligence, but not active negligence.

139 Ariz. at 168–69, 677 P.2d at 941–42 (citations omitted). This matter raised by Western Wood must be remanded to the trial court for a new trial in which the jury instruction will follow the indemnity rule set forth in *Estes Co., id.*

## VI. CONCLUSION

The Board is denied relief as to its appeal in 1 CA–CIV 7872. Likewise, Mardian does not prevail on any issues raised in its appeal, 1 CA–CIV 7950. Western Wood's cross-appeal in 1 CA–CIV 7950 is meritorious, and therefore the matter involving Western Wood's indemnification of Mardian is remanded to the trial court for a new trial.

## VII. ATTORNEYS' FEES ON APPEAL

We recognize that the attorneys' fees in this case have not simply become a case of the tail wagging the dog; the attorneys' fees have become the dog. The attorneys' fees incurred by all parties have exceeded the amounts in issue by such a vast amount that the substantive issues have diminished in intrinsic importance and serve only to direct or deflect the mounting liabilities for attorneys' fees. It would appear to this court that this case would have been ideally suited for binding arbitration.

All parties with the exception of the Board have requested attorneys' fees and costs incurred on appeal. Attorneys' fees

are allowed on appeal in actions arising out of contract. A.R.S. § 12–341.01; *Wenk v. Horizon Moving & Storage Co.*, 131 Ariz. 131, 639 P.2d 321 (1982). In our discretion, we award attorneys' fees for Pioneer against Mardian, and for Mardian against the Board. We deny an award of attorneys' fees to Mardian as against Pioneer, Western Wood and Rossman. The request for attorneys' fees made by Rossman against Mardian is granted. We also grant Western Wood attorneys' fees against Mardian pursuant to *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 391–95, 710 P.2d 1025, 1046–50 (1985).

JACOBSON, P.J., and CONTRERAS, J., concur.